WILLIAM H. OWEN *vs.* NATHAN F. ROBERTS.

Penobscot. Opinion April 15, 1889.

*Insolvent law. Foreign creditor. Dissolution of attachment.*

By the provisions of § 33, c. 70, R. S., an assignment of the debtor's property relates back and dissolves all attachments on *mesne* process, made within four months of the commencement of insolvency proceedings.

No exception is made in favor of foreign creditors.

The purpose and object of the insolvent law is the marshalling of the debtor's property to secure an equal distribution among his creditors.

A foreign creditor seeking his remedy within this jurisdiction upon a contract entered into while the insolvent law is in force, can not successfully invoke the protection of that provision in the state and federal constitution which prohibits a state from passing any law impairing the obligation of contracts.

The remedy existing when and where the contract is made and to be performed is all that can be accorded.

In reference to contracts made before the enactment of the insolvent law, a different rule would apply, and the party might properly claim protection of a vested right under the general law of attachment in existence when the debt was contracted.

REPORT, on facts agreed.

The plaintiff is, and ever has been, a resident of the city, county and state of New York. The defendant is a resident of Dexter in the county of Penobscot, and a deputy sheriff in and for said county of Penobscot.

October 1, 1885, one William J. Haseltine, from his birth a resident of said Dexter, was indebted to the plaintiff for certain goods before that time purchased by him, of the plaintiff, through his travelling salesman, at said Dexter. On that day, the plaintiff brought his action in this court, returnable to the January term, 1886, to recover for the said indebtedness; and on the same day delivered the said writ to the defendant Roberts for service, who attached certain goods, wares and merchandise of the said Haseltine and made due return on the said writ, and kept the said goods in his possession by virtue of his said attachment. The action was duly entered at the January term of this court for 1886 and continued from term to term until the October term of said year, when judgment was rendered against the said Haseltine; but an entry at the same term, was made upon the court docket, that execution should not run against the body of said Haseltine. November 15, 1886, execution was duly issued thereon against the said Haseltine in common form, with the usual clause for arrest and imprisonment stricken out.

Within thirty days after the rendition of said judgment, a demand was seasonably and legally made by a proper officer holding said execution, on the said Roberts for the said goods, wares and merchandise for the purpose of satisfying said execu-

tion, which the said Roberts failed to deliver, and the said officer made due return thereof on the said execution.

It was further agreed, that on January 22, 1886, within four months after the attachment of the goods, by the defendant as deputy sheriff, the said Haseltine was adjudged an insolvent debtor on his own petition in the insolvent court for Penobscot county, and that on the 11th day of February following, an assignee of his estate was appointed, who April 30, 1886, made demand on the said Roberts for the said goods held by him by virtue of the said attachment. Said Roberts, after notice to the attorneys of the said Owen, but without their consent, delivered said goods to said assignee, who also gave notice to the said attorneys of said Owen that he held said goods in his possession.

On the third day of June following, the said assignee petitioned the insolvent court for leave to sell said goods under § 36, c. 70, R. S., and after due notice to the attorneys of the said Owen the judge of the said court after a hearing, at which there was no appearance on the part of the said Owen, either by himself or his attorneys, ordered the said assignee to sell the said goods. The assignee afterwards sold the same at public auction of which the plaintiff's attorneys had notice.

The original debt was contracted by the said Haseltine since the enactment of the insolvent laws of Maine.

The insolvency of the said Haseltine was duly suggested at the January term, 1886. October 7, 1886, the said Haseltine was duly granted his discharge in insolvency by the insolvent court of Penobscot county, which said discharge was presented in this court at the October term, 1886, a formal pleading of the same being waived, and thereafterwards at said term, plaintiff's said judgment was rendered and execution issued thereon, as before stated.

It was agreed that all the proceedings on the part of the plaintiff are in due form of law; the defendant contending that the requirements of §§ 36 and * 37 of c. 70, R. S., ought to have been complied with by the plaintiff, but have not.

*R. S., c. 70, § 37, provides that "the claimant of property sold under section thirty-six shall bring his suit against the assignee, to be served on him within sixty days after the judge orders such sale, to recover compensation for the value thereof, or be precluded thereafter from maintaining any action at law or in equity for its recovery."

It was agreed that all the proceedings in insolvency are in due form of law.

This action was brought January 27, 1888.

*Crosby and Crosby*, for plaintiff.

Insolvent laws of Maine have no application to citizens of another state. *Hills* v. *Carlton*, 74 Maine, 156 ; *Felch* v. *Bugbee*, 48 Id. 9, 14.

If an attachment, made by a creditor of another state is dissolved, he has no protection; no recognition of his constitutional rights. Section 17 of the law forbidding payment of debts to foreign creditor, impairs the obligation of contracts. Under § 33 how can assignee recover preferences from foreign creditor entitled to his whole pay? Provisions of §§ 44, 46, 47 and 49 regulating a discharge of provable debts can have no application to foreign creditors who do not come in and prove their debts. *Merrill* v. *McLaughlin*, 75 Maine, 64, 68. Legislature, in changing the remedy can not deprive a party of all remedy; must leave him a substantial remedy. Cooley Con. Lim., pp. 289, 290, 352, note; *State* v. *Bank*, 1 S. C. (N. S.) 63.

Proceedings under § 36 relate only to questions between domestic creditors and the assignee. Assignee can not compel foreign creditor to submit his case to the insolvent court of this state. Notice, under this section, should have been given to the sheriff, Roberts, holding the goods, and not Owen who had no right of possession and could not maintain an action for their possession or conversion.

Section 37 provides that the claimant shall bring his suit against the assignee within sixty days after the judge has ordered the sale. The order of sale was July 7, more than sixty days before plaintiff got judgment. It would be absurd to bring suit against the assignee, when his only claim was by virtue of an attachment, thus situated, and which might never come to judgment.

The only provision which, in terms, applies to foreign creditors is c. 319, acts of 1885, exempting debtors from liability to arrest, on account of debts due out of the state. Its specific application to this case, expressed in well defined terms, strengthens the

argument, that all the other provisions have no such application. "*Expressio unius est exclusio alterius.*"

*M. Sprague,* for defendant.

The purpose of the statute as defined in *Wright* v. *Huntress,* 77 Maine, 180, would be defeated if the position of the plaintiff is sustained. A foreign creditor coming into the courts of this state to enforce his claims, is bound by the remedies there afforded. He is bound by our statute of limitations and exemptions. His right of attachment is subject to be defeated by insolvency. *Grant* v. *Lyman,* 4 Met. 470, 475.

The remedy by imprisonment, is subject to be defeated in same manner, if the claim is provable in insolvency. Ch. 319, Acts of 1885. Plaintiff admits the constitutionality of the law and power of legislature to thus change the remedy, by taking his execution against the goods attached and not against the body of the debtor. Validity of the contract not thereby affected. *Sturges* v. *Crowninshield,* 4 Wheat. 122.

As to the effect of dissolving attachments, after the insolvent law went into operation, on contracts entered into before its passage, counsel cited, *Bigelow* v. *Pritchard,* 21 Pick, 169, 175. In case at bar, statute had been in operation several years, before the attachment was made.

Foreign creditor suffers no hardship by the dissolution of his attachment. He may come into the insolvent court and share equally with other creditors. The result is an equal distribution of the assets.

Plaintiff had no special property in the goods by virtue of the attachment. The property was in the custody of the law; by insolvency of the debtor it remained in the custody of the law; only the right to its possession was changed to the assignee, who could maintain actions for its possession, &c. *Jewett* v. *Preston,* 27 Maine, 400.

Attachment being dissolved, defendant's obligations to plaintiff ceased. *Sprague* v. *Wheatland,* 3 Met. 416.

Defendant not liable, even for nominal damages. *Grant* v. *Lyman,* 4 Met. 470. Plaintiff's rights lost by failure to comply with §§ 36 and 37, c. 70, R. S.

FOSTER, J. Tort against the defendant as deputy sheriff for failing to keep property attached on a writ in favor of the plaintiff, a resident of New York.

The question is whether or not that attachment was dissolved, and the defendant thereby released from his legal obligation to safely keep the attached property, by the insolvent proceedings of the plaintiff's debtor commenced within four months of the date of the attachment.

Had the plaintiff been a resident of this state there is no doubt but that his attachment would have been dissolved by the insolvency proceedings.

Does the fact that the plaintiff was and still is a resident of another state continue the force of the attachment against the assignment in insolvency?

We think it does not.

By the express provision of § 33, c. 70, R. S., such assignment relates back, and dissolves all attachments made within four months of the commencement of insolvency proceedings.

No exception is made in favor of attachments of foreign creditors. Nor is there any reason, either upon principle or authority, why there should be any such exception. The purpose and object of the insolvent law is the marshalling of the debtor's property to secure an equal distribution among his creditors. For this very purpose all attachments are dissolved and all lien claims are broken up, unless made and existing at least four months prior to insolvency proceedings.

But it is contended that this provision ought not to extend to and bind this plaintiff, because he is a citizen of another state, and he invokes that provision of the federal and state constitutions which prohibits the state from passing any law impairing the obligation of contracts.

The answer to that proposition is, that it has no application to the case under consideration.

While the obligation of contract, wherever it exists, is always to be protected and sheltered by the broad canopy of the constitution, yet that which is purely a matter of process or remedy is to be governed and regulated by the laws of the place where the

remedy is sought. Nor will the inhibition of the constitution be held to apply where there is a change in the form of the remedy merely, or a modification of it, provided no substantial right secured by the contract is thereby impaired. No more can properly be demanded, even by the most liberal construction of constitutional rights bearing upon the obligation of contract, than the remedy existing when and where the contract is made and to be performed. If greater protection is claimed, it certainly can not be by virtue of any obligation of contract. If such protection is to be found it must exist on account of the insolvent law which was in existence at the time the plaintiff's debt was contracted, and its relation to the parties to that contract.

It is unquestionably true that state insolvent laws have no extra-territorial force, and can affect only such contracts as are made between citizens of the state in which the law exists. Nor can the legislature of a state, by an insolvent law, suspend or bar the right of action on a contract, or discharge a debt, made between one of its citizens and a citizen of another state. "A certificate of discharge will not bar an action brought by a citizen of another state, on a contract made with him." *Cook* v. *Moffat*, 5 How. 295. The authorities are in harmony in support of this doctrine. *Felch* v. *Bugbee*, 48 Maine, 9; *Hills* v. *Carleton*, 74 Maine, 159; *Baldwin* v. *Hale*, 1 Wall. 223; *Guernsey* v. *Wood*, 130 Mass. 503.

But while it is true that the state insolvent law has no control over the debt or contract made with citizens of another state, where they are not parties to proceedings under such law, yet it by no means follows that the law has no control over the property of the insolvent. *South Boston Iron Co.* v. *Boston Locomotive Works*, 51 Maine, 590; *Grant* v. *Lyman*, 4 Met. 475; *Frost* v. *Ilsley*, 54 Maine, 351.

Whether there might not have been a vested right in the plaintiff under the general law of attachment, had his debt been contracted prior to the enactment of the insolvent law, is a question not now before us. The plaintiff's debt, in the case under consideration, was contracted with the insolvent law in existence at the time. Although a citizen of another state, the law was before his eyes when the debt was made and when the remedy for its

satisfaction was invoked. He came into this state, sought the *lex fori*, and attached the property of his debtor. He must be satisfied with the remedy he finds here,—such remedy as the citizens of this state are obliged to submit to. Neither the comity between states, nor the obligation of contract, can be invoked in this case to the prejudice of our own citizens. *Fox* v. *Adams*, 5 Maine, 245; *Chaffee* v. *Bank*, 71 Maine, 524; *South Boston Ins. Co.* v. *Boston Locomotive Works*, 51 Maine, 590, 591.

The question here is not whether the certificate of discharge under the insolvent law would be a bar to the plaintiff's action, or whether such proceeding is incompetent to discharge a debt due a citizen of another state. The plaintiff's debt was not discharged, nor his action barred, on account of the insolvency proceedings. He recovered judgment against his debtor. But the attachment was dissolved by force of the statute operative upon all who saw fit to contract subsequent to its enactment. The plaintiff has no just ground of complaint because he is placed on the same plane with the citizens of our own state, and in the remedy which he has sought he has justice done him if allowed to enjoy equal privileges with them.

The decision in *Grant* v. *Lyman*, 4 Met. 470, 475, is decisive upon the question involved in the case before us.

"As the attachment was dissolved by operation of law, the officer's liability to the creditor, at whose suit the attachment was made, is at an end." *Mitchell* v. *Gooch*, 60 Maine, 110, 113; *Sprague* v. *Wheatland*, 3 Met. 416; *Grant* v. *Lyman*, *supra*.

*Judgment for defendant.*

PETERS, C. J., DANFORTH, LIBBEY, EMERY and HASKELL, JJ., concurred.